## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

WENDY FAULHABER, an individual,

        PLAINTIFF,

v.

WELD COUNTY SCHOOL DISTRICT RE-8 and
ALAN KAYLOR, an individual.

        DEFENDANTS.

---

## VERIFIED COMPLAINT

---

Plaintiff, WENDY FAULHABER, by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Verified Complaint against Defendants, WELD RE-8 SCHOOL DISTRICT and ALAN KAYLOR, alleging as follows:

### INTRODUCTION

1.    This is an employment discrimination and retaliation suit brought by a former employee of Weld Re-8, who was harassed during her employment by her supervisor in violation of state and federal law. Plaintiff complained about the inappropriate and harassing actions of her supervisor. After her complaints, Plaintiff was retaliated against by Weld Re-8, she was harassed, excluded from job responsibilities, denied a raise, and constructively discharged.

2.    Plaintiff asserts claims against Weld Re-8 of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII") and Title

IX of the Education Amendments of 1972, as amended 20 U.S.C. § 1681 *et seq* ("Title IX") and of retaliation against her for having engaged in protected activity by objecting to the harassment by Weld Re-8, also in violation of Title VII and Title IX. Plaintiff further asserts claims of discrimination and retaliation on the basis of her gender under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* ("CADA"). Finally, Plaintiff asserts a claim against Defendant Alan Kaylor, her supervisor, of tortious interference with contract under Colorado common law.

## PARTIES

3.     Plaintiff, WENDY FAULHABER ("Plaintiff" or "Ms. Faulhaber"), is a citizen of Weld County who presently resides at 190 Lane Court, Ft. Lupton, CO 80621.

4.     Defendant, WELD RE-8 SCHOOL DISTRICT ("Defendant Weld Re-8" or "Weld Re-8"), is a Colorado school district with a principal place of business at 301 Reynolds Street, Ft. Lupton, CO 80621.

5.     Defendant, ALAN KAYLOR ("Defendant Kaylor" or "Mr. Kaylor") is a resident of the State of Colorado.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, because the instant action arises under federal law, specifically Title VII and Title IX.

7.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.    In addition, this Court has jurisdiction over the Defendant as the complained of unlawful employment practices took place in Colorado and the Defendant maintains substantial, ongoing business operation(s) in this state.

9.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

10.    At all relevant times, Plaintiff was an "employee", as set forth in 42 U.S.C. § 2000e(b) of Title VII and in Colo. Rev. Stat. § 24-34-401(2) of the CADA.

11.    At all relevant times, Weld Re-8 was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(f) of Title VII and in Colo. Rev. Stat. § 24-34-401(3) of the CADA.

12.    At all relevant times, Weld Re-8 received federal financial education assistance and, thus, was subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

## FACTUAL ALLEGATIONS

13.    Plaintiff, who is female, began working for Defendant in 2008 and shortly after became the election official and executive secretary to the Board of Education ("BOE") and Superintendent.

14.    Ms. Faulhaber was an exemplary employee as shown by the lack of any negative performance evaluations, write-ups, or reprimands of any kind throughout her extensive tenure in that position.

15.    In 2013, the Superintendent at Weld Re-8 was removed from his position.

16.    This removal resulted in a nationwide search for a new Superintendent and John Hoag was appointed interim Superintendent.

17.    In January 2016, Alan Kaylor, a popular, well-loved, high school principal in the district was hired for the job with a start date of July 1, 2016.

**Plaintiff's Complaint of Sex Discrimination Against Alan Kaylor**

18.    Prior to his start date, Mr. Kaylor and Ms. Faulhaber began meeting to prepare for working together in the upcoming school year.

19.    During this time, casual conversation suddenly was riddled with inappropriate sexual comments and innuendo.

20.    One such comment came after Ms. Faulhaber, discussing work, said, "I need you," and Mr. Kaylor immediately responded, "Can you look me in the eyes and tell me that slowly? I don't hear it enough."

21.    Mr. Kaylor further shared that his wife did not make those types of comments to him.

22.    Mr. Kaylor also began to call Ms. Faulhaber his "work wife."

23.    Ms. Faulhaber became increasingly uneasy as the comments escalated.

24.    In mid-April, 2016, the pair were discussing Ms. Faulhaber's daughter's prom, including her dress and date.

25.    Mr. Kaylor talked about how Ms. Faulhaber's daughter's date was, "still a seventeen (17) year old boy and wants one thing and one thing only."

26.    Mr. Kaylor proceeded to tell Ms. Faulhaber that "that never changes. If I pay that much for dinner, I still expect to get some and she knows it."

27.    Mr. Kaylor's comments were unlawful, offensive, and unwelcome.

28.     The continued harassment created a very uncomfortable and stressful work atmosphere for Ms. Faulhaber.

29.     Ms. Faulhaber reported Mr. Kaylor's behavior to BJ Buchmann (Assistant Superintendent), who had witnessed some of the mid-April conversation.

30.     Mr. Buchmann reported the complaint to Mr. Hoag who then informed Carol McDermott (BOE President).

31.     Mr. Hoag and Ms. McDermott launched an official investigation into the allegations.

32.     Ms. Faulhaber asked to remain anonymous because she worked closely with the Board members, administrators, and was responsible for training and developing lead secretaries; nonetheless, the BOE was notified.

33.     Ultimately, the investigation substantiated Plaintiff's claims and Mr. Kaylor received a letter of reprimand on May 23, 2016.

**Ms. Faulhaber's Privacy was Invaded After She Reported the Harassment**

34.     Though the investigation was to remain confidential, immediately after his meeting with Mr. Hoag and Ms. McDermott, Mr. Kaylor disclosed both the complaint and the identity of Ms. Faulhaber with his secretary and Vice Principal on May 19, 2016.

35.     Shortly after Mr. Kaylor disclosed the subject of the investigation, Ms. Faulhaber's colleagues in Weld Re-8 including teachers, administrators, and BOE members came to Mr. Kaylor's defense.

36.     On May 23, 2016, Ms. Faulhaber's complaints against Mr. Kaylor were discussed in the BOE executive session.

37.   Ms. McDermott inadvertently disclosed Ms. Faulhaber's identity to the Board Members in an email when she expressed confidence that Ms. Faulhaber and Mr. Kaylor "could move forward from these events."

38.   On May 27, 2016, Ms. Faulhaber was asked about the complaint by a co-worker in her building.

39.   The allegations were also shared with Mr. Kaylor's former school at an Instructional Leadership team meeting attended by much of the staff and administrators.

**Ms. Faulhaber was Retaliated Against Following Her Complaints**

40.   As a result of Mr. Kaylor's breach of confidence, Ms. Faulhaber experienced an increasingly hostile work environment from those who supported Mr. Kaylor.

41.   On May 31, 2016, during a BOE executive session, Susan Browne (Board Member) confronted Ms. Faulhaber for her actions, her faith, gender, motivation, family, and work ethics as well as demanded her resignation.

42.   Ms. Browne's accusations made it clear that she had received other confidential information about Plaintiff's compensation.

43.   Though Ms. Browne alone made the comments publicly, Ms. Faulhaber's interactions with other coworkers had made it clear that similar opinions were shared by others with whom she worked.

44.   Ms. Faulhaber continued to work as the Executive Secretary to the Superintendent and BOE.

45.   Once Mr. Kaylor took over as Superintendent, he ceased responding to Ms. Faulhaber in email or over text which made her job as his secretary very difficult.

46.    Because of the lack of communication and therefore a lack of Ms. Faulhaber being able to fulfill her duties, Ms. Faulhaber feared she would be demoted; those fears were realized on August 19, 2016, when she was removed from her position as Office Manager.

47.    The job removal meant that Ms. Faulhaber no longer managed and supported two other employees or the office as a whole.

48.    Similarly, Ms. Faulhaber lost her job responsibility of holding monthly secretary meetings and being responsible for training and developing consistent office procedures for Weld Re-8 schools.

49.    Additionally, Ms. Faulhaber has received numerous calls and letters from others in the district requesting her resignation.

50.    Instead of receiving the six percent (6%) raise Ms. Faulhaber had been promised, she only received a three percent (3%) raise.

51.    Although Ms. Faulhaber was told that the district could not afford raises, she later learned that others had received seventeen to twenty-seven percent (17-27%) raises without any increase in duties.

52.    On August 22, 2016, Ms. Browne stood up at the Board Meeting and asked to call an executive session with only the Board and Mr. Kaylor present.

53.    Ms. Faulhaber advised Ms. McDermott that the session should not be allowed as there was no state statute authorizing the meeting or the intended topics of discussion.

54.    Similarly, Ms. Faulhaber advised that she was unable to give the required twenty-four (24) hours' notice.

55.    Further, Ms. Faulhaber and Mr. Buchmann's exclusion from the meeting was highly atypical.

56.    Ms. McDermott denied the request for the executive session given these irregularities and the illegal nature of the meeting.

57.    Plaintiff filed a formal Charge of Discrimination ("First Charge") with the Equal Employment Opportunity Commission ("EEOC") on December 6, 2016.[1]

58.    On September 1, 2016, Plaintiff sent a Governmental Immunity Notice to Defendant pursuant to Colo. Rev. Stat. § 24-10-109.

59.    On March 13, 2017, an executive session was held in which Mr. Kaylor's 2016 evaluation was completed.

60.    Before the session began, Ms. Browne requested that Ms. Faulhaber not be allowed in the session, as her attendance was "unnecessary" even though Plaintiff was allowed in executive sessions for the past two (2) years.

61.    Ms. McDermott requested that Ms. Faulhaber leave the meeting.

62.    This was a confusing and humiliating moment for Ms. Faulhaber, as the press was present and covering the meeting.

63.    Ms. Faulhaber started the recording and reminded the Board of her role as custodian of records.

---

[1] Plaintiff filed a Charge of Discrimination, assigned Case No. 541-2017-00324 on December 6, 2016, with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that she was discriminated against based on her sex and retaliated against for complaining about this unlawful discrimination in violation of Title VII.

64.     As Ms. Faulhaber was leaving, Ms. McDermott requested that Ms. Faulhaber explain the evaluation process and all the documentation, making it obvious that Ms. Faulhaber's presence in the meeting was anything but "unnecessary."

65.     Ms. Faulhaber instructed the Board regarding the same and left the meeting.

66.     Approximately an hour and a half later, Ms. Faulhaber received a phone call, requesting that she return to the executive session to provide guidance and direction to assist the Board in completing the evaluation; she declined this request.

**Weld Re-8 Targeted Ms. Faulhaber**

67.     On March 14, 2017, Ms. Faulhaber used one of her sick days due to a severe stress headache.

68.     Subsequently, Ms. Faulhaber and her daughter both contracted the stomach flu on March 23, 2017, necessitating that Ms. Faulhaber utilize another sick day.

69.     Following the use of these two (2) sick days, Brenda Johnson (Business Manager) sent multiple emails to both Mr. Kaylor and Mr. Buchmann, asking them to "hold Ms. Faulhaber responsible" for the two (2) days she was absent, and further accusing Ms. Faulhaber of "cheating the district."

70.     Ms. Faulhaber and her daughter both returned to the school the following day.

71.     Without notifying Ms. Faulhaber, Suzanne Bosica (Secretary) and Julie Garcia (Principal) removed Ms. Faulhaber's daughter from class and sent her home with her father, due to an alleged policy of not allowing children to return to school for twenty-four (24) hours after the last symptom.

72.     As Ms. Faulhaber wrote the policies for Weld Re-8, she immediately knew there was no such policy; and the removal of her daughter from school was further retaliation for her complaint, as Ms. Bosica and Ms. Garcia were supporters of Mr. Kaylor.

73.     In May 2017, Ms. Faulhaber approached Mr. Kaylor and Ms. McDermott to ask if she could hand her daughter her diploma.

74.     Mr. Kaylor and Ms. McDermott quickly agreed, noting how important, special, and memorable it is to hand your child their diploma.

75.     Shortly after, Ms. Faulhaber told her daughter the good news, but about one (1) week later, Ms. Faulhaber received an email informing her that she would no longer be able to hand her daughter a diploma even though Ms. Faulhaber had been allowed to hand her son his diploma four (4) years earlier with no issue.

**The Hostile Work Environment Forced Ms. Faulhaber to Seek Other Employment**

76.     A position with the Department of Human Services ("DHS") as a COMPASS Case Manager became available in August 2017, and Ms. Faulhaber applied for the same.

77.     Ms. Faulhaber notified the District Leadership Team of her application and notified them again when she was called in for an interview on August 29, 2017.

78.     Ms. Faulhaber was offered the COMPASS Case Manager job two (2) days later.

79.     Ultimately, Ms. Faulhaber accepted this position, even at a pay cut to be clear of the stress and hostility of her former position and to no longer be directly supervised by Mr. Kaylor.

80.     Importantly, Ms. Faulhaber is still an employee of Weld Re-8 and is contracted with DHS for her new position.

81.   On September 1, 2017, Ms. Faulhaber informed Mr. Kaylor and Mr. Buchmann that she had accepted another position, but understood she had remaining responsibilities to fulfill.

82.   The Board provided Mr. Kaylor with direct orders via email that he was to work out the new contract terms with Ms. Faulhaber so she could continue working on an as-needed basis.

83.   Mr. Buchmann suggested Ms. Faulhaber work through September 23, 2017, as Executive Secretary and work as needed in addition to her regular hours.

84.   Accordingly, Ms. Faulhaber informed her new supervisor that her start date would be September 25, 2017.

85.   However, Mr. Kaylor later made Ms. Faulhaber's last day September 15, 2017.

86.   On September 15, 2017, Mr. Kaylor approached Ms. Faulhaber at 3:30 p.m., asking if her new contract could wait.

87.   Ms. Faulhaber replied that the contract could not wait and Mr. Kaylor walked out of the room.

88.   Ms. Faulhaber understandably did not complete any additional work for Weld Re-8 until she had received the contract on September 20, 2017, for up to fifteen (15) hours of work per week.

89.   Soon after, Ms. Faulhaber was asked to join a meeting with Mr. Buchmann, Marc Kahn, the new Business Manager, and Margaret Saldano.

90.   In this meeting, Ms. Faulhaber was erroneously accused of using the credit card to pay for a room at the Broadmoor in December 2016 and tampering with accounting records.

91.   Concerningly, Ms. Faulhaber's 2016 Colorado Association of School Boards ("CASB") file had been removed from her computer without her knowledge.

92.    However, she was able to recreate the information via email communications, forms, the purchase order, and her own bank statements to show that she had paid for the room herself.

93.    The accusations, arising from alleged behavior eight (8) months prior, originated from Ms. Johnson and were clearly not based in reality or fact.

94.    Ms. Faulhaber later learned that several Board and community members, including Shirley Wood, Ms. Johnson, and Mr. Kaylor, were aware of the allegations, but Plaintiff was never allowed to defend herself against the same.

95.    On September 21, 2017, Ms. Faulhaber was informed that Mr. Kaylor had announced that he would resign in executive session and she was asked to assist in putting the announcement of the same on an amended agenda to be presented at the Board meeting that night.

96.    It became known that Mr. Kaylor's announced resignation was based on concerns about the raises he provided to some employees and had nothing to do with Ms. Faulhaber or her complaints against him.

97.    On September 24, 2017, Ms. Faulhaber began receiving messages from family and friends, detailing a flyer that community member, Jesus Ramirez, had been circulating.

98.    Ms. Faulhaber did not know who Mr. Ramirez was, yet it appeared he had been provided with confidential information leaked from executive sessions, and supported Mr. Kaylor. Mr. Ramirez's flyer alleged that Ms. Faulhaber had made false sexual harassment claims, misused taxpayers' money, and had "more scandals and lies than many politicians."

99.   This flyer was later circulated on social media, published by the Fort Lupton Press and on Fort Lupton Happenings and distributed at the bi-monthly community bingo night.

100.   Another post on social media was distributed, stating that Ms. Faulhaber was an "overpaid secretary" making $80,000.00 per year, which was also inaccurate, but was nonetheless based on information shared in an executive session regarding Ms. Faulhaber's hourly wage.

101.   On September 25, 2017, Ms. Faulhaber went into work at Weld Re-8 to prepare for a regular board meeting to be held the same night at 6:30 p.m. Beginning at 5:30 p.m., a crowd of people began gathering outside, pulling and banging on the doors.

102.   Signs were being held up, demanding Ms. Faulhaber's resignation, and at one point, the crowd began chanting Ms. Faulhaber's name.

103.   Five (5) minutes before the meeting was scheduled to begin, Mr. Kaylor and his wife entered to tumultuous applause.

104.   During the meeting, the crowd continued to shout out names and accusations towards Ms. Faulhaber.

105.   The meeting was eventually moved to the high school auditorium, and two (2) police officers were present. Ms. Faulhaber was forced to sit through four (4) grueling and frightening hours of the angry crowd, insults, and false accusations all of which had been discussed in executive sessions.

106.   Not once during the meeting did any Board member or administrator stop, correct, or state that this meeting was not a platform to attack Ms. Faulhaber.

107. Ms. Faulhaber soon began having panic attacks and her daughter was forced to change her cell phone number due to the constant barrage of accusations against her mother.

108. Similarly, the day after the meeting, Weld Re-8 cut off Ms. Faulhaber's access to her government email account which caused difficulties in her new position.

109. Ms. Faulhaber asked district IT about her email address as she was still working as a contractor for the district.

110. Similarly, Ms. Faulhaber learned that three (3) other contractors and an employee who retired in July were still receiving emails to the district email address(es).

111. Additionally, Ms. Faulhaber learned that the request to shut off her email did not come from the HR department, as is typical.

112. As such, she was rightfully concerned that her important emails and communications supporting her claims will be "lost" or destroyed.

113. Moreover, on Ms. Faulhaber's first day at her new position, she was in training with a co-worker Eric Padilla, who mentioned that he had received e-mails and had been approached by several staff members about Ms. Faulhaber prior to her start date.

114. Additionally, Ms. Faulhaber's supervisor at her new position, Karin Crandall, received emails, including pictures, pertaining to Ms. Faulhaber before Plaintiff's hire.

115. Based on the continuing retaliation, Plaintiff filed a second Charge of Discrimination on December 20, 2017, ("Second Charge"), regarding the conduct of Defendant.[2]

---

[2] Plaintiff filed a Charge of Discrimination, assigned Case No. 541-2018-00741 on December 20, 2017, with the EEOC in which she alleged that she was discriminated against based on her sex and retaliated against for complaining about this unlawful discrimination in violation of Title VII.

116.  On July 17, 2018, the EEOC issued a Notice of Right to Sue in connection with the Second Charge.

117.  On July 25, 2018, the EEOC issued a Notice of Right to Sue in connection with the First Charge.

118.  Weld Re-8 is not just Ms. Faulhaber's local school district, or even just her place of employment, it is the community where she lives and has chosen to raise her family.

119.  In fact, Ms. Faulhaber has children who still attend school in the district.

120.  As such, the actions of the district affected, and continue to affect, Ms. Faulhaber in a profound and deeply disturbing way.

## FIRST CLAIM FOR RELIEF
*(Violations of Title VII – Sex Discrimination)*

121.  Plaintiff incorporates by reference paragraphs 1 through 120 as if fully set forth herein.

122.  Plaintiff belongs to a protected class based on her sex.

123.  Defendant subjected Plaintiff to less favorable terms and conditions of her employment based on sex as described in this Complaint, including treating women in a degrading nature based on her gender, failing to act to remedy Mr. Kaylor's discriminatory treatment of Plaintiff and other female employees despite Defendant's knowledge of this harassment; treating her with hostility, and removing her job duties.

124.  Defendant's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

125.  Defendant's conduct discriminated against Plaintiff on the basis of her gender in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

126.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

127.  Weld Re-8's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

**SECOND CLAIM FOR RELIEF**
*(Violations of Title VII – Retaliation)*

128.  Plaintiff incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

129.  Plaintiff participated in statutorily protected opposition to Title VII discrimination by complaining about harassment based on her sex.

130.  As a result of Plaintiff's protected opposition to harassment, Weld Re-8 retaliated against her by subjecting her to less favorable terms and conditions of employment as described in this Complaint, including, but not limited to: verbal harassment, denial of proper compensation for her work that had been promised, targeting of her family members, serious false accusations regarding the misuse of district funds, humiliating her in front of her coworkers and the public, treating Ms. Faulhaber differently than others in the district regarding policy application, the intentional dispersal of false allegations about Ms. Faulhaber from district employees and board members, contacting Ms. Faulhaber's new supervisor to disparage her, disallowing her access to her district email account, continuing to create a hostile work environment, demotion, and constructive discharge.

131.  Weld Re-8's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

132.  Weld Re-8's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

133.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### THIRD CLAIM FOR RELIEF
*(Violations of Title IX – Sex Discrimination)*

134.  Plaintiff incorporates by reference paragraphs 1 through 133 as if fully set forth herein.

135.  Defendant subjected Plaintiff to less favorable terms and conditions of her employment based on sex as described in this Complaint, including treating women in a degrading nature based on her gender, failing to act to remedy Mr. Kaylor's discriminatory treatment of Plaintiff and other female employees despite Defendant's knowledge of this harassment; treating her with hostility, and removing her job duties.

136.  Defendant's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

137.  Defendant's conduct discriminated against Plaintiff on the basis of her gender in violation of Title IX.

138.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished

reputation and other pecuniary losses, and emotional pain and suffering, mental anguish,

inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## FOURTH CLAIM FOR RELIEF
*(Violations of Title IX – Retaliation)*

139.   Plaintiff incorporates by reference paragraphs 1 through 138 as if fully set forth

herein.

140.   Plaintiff complained about sex discrimination that was unlawful under Title IX.

141.   As a result of Plaintiff's complaints about sex discrimination, Weld Re-8 retaliated

against her by subjecting her to less favorable terms and conditions of employment as described

in this Complaint, including, but not limited to: verbal harassment, denial of proper

compensation for her work that had been promised, targeting of her family members, serious

false accusations regarding the misuse of district funds, humiliating her in front of her coworkers

and the public, treating Ms. Faulhaber differently than others in the district regarding policy

application, the intentional dispersal of false allegations about Ms. Faulhaber from district

employees and board members, contacting Ms. Faulhaber's new supervisor to disparage her,

disallowing her access to her district email account, continuing to create a hostile work

environment, demotion, and constructive discharge.

142.   Weld Re-8's actions taken against Plaintiff were done knowingly and intentionally

or with reckless disregard of her rights.

143.   Weld Re-8's conduct constitutes sex discrimination in violation of Title IX.

144.   As a direct, proximate and foreseeable result of the Defendant's intentional actions

in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished

reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## FIFTH CLAIM FOR RELIEF
*(Violations of the CADA – Sex Discrimination)*

145.   Plaintiff incorporates by reference paragraphs 1 through 144 as if fully set forth herein.

146.   Plaintiff belongs to a protected class based on her sex.

147.   Defendant, its employees, and agents unlawfully discriminated against Plaintiff by harassing her during the course of her employment because of her sex.

148.   Defendant's actions were unlawful, intentional, willful, and done in reckless disregard of Plaintiff's legal rights as protected by the CADA.

149.   Plaintiff demonstrated a pattern of opposition to the unlawful harassment, retaliation, and discrimination that she experienced based upon her sex while employed by Defendant.

150.   Defendant's conduct as described herein constituted a discriminatory or unfair employment practice in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

151.   As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## SIXTH CLAIM FOR RELIEF
*(Violations of the CADA - Retaliation)*

152.   Plaintiff incorporates by reference paragraphs 1 through 151 as if fully set forth herein.

153.   Plaintiff engaged in statutorily protected opposition to harassment by complaining about the treatment she was experiencing and the policy violations of her supervisor.

154.   As a result of Plaintiff's protected opposition to discrimination, Defendant retaliated against her by subjecting her to less favorable terms and conditions of employment including, but not limited to: verbal harassment, denial of proper compensation for her work that had been promised, targeting of her family members, serious false accusations regarding the misuse of district funds, humiliating her in front of her coworkers and the public, treating Ms. Faulhaber differently than others in the district regarding policies, the intentional dispersal of false allegations about Ms. Faulhaber from district employees and board members, contacting Ms. Faulhaber's new supervisor to further attack her, disallowing her access to her district email account, continuing to create a hostile work environment, demotion, and constructive discharge.

155.   Defendant's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

156.   A reasonable employee would have found Defendant's actions to be materially adverse.

157.   There is a causal connection between the protected activity of complaining and the materially adverse action.

158.   Defendant's conduct as described herein constituted a discriminatory or unfair employment practice in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

159.   As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## EIGHTH CLAIM FOR RELIEF

*(Tortious Interference with Contract against Defendant Kaylor)*

160.  Plaintiff incorporates by reference paragraphs 1 through 159 as if fully set forth herein.

161.  Plaintiff had an employment contract with Weld Re-8.

162.  Defendant Kaylor knew or reasonably should have known of this contract.

163.  Defendant Kaylor by words and/or conduct, intentionally caused Weld Re-8 not to perform or to constructively terminate the contract with Plaintiff, or interfered with Weld Re-8's performance of the contract causing Weld Re-8 not to perform or to constructively terminate the contract with Plaintiff.

164.  Defendant Kaylor's interference with the contract was improper.

165.  As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of pay, salary and benefits, loss of job, loss of career opportunities, emotional distress, inconvenience, mental anguish, and related injuries of a similar nature.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendant, and order the following relief:

      a.  Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

      b.  Back pay, benefits, and other economic losses;

      c.  Injunctive and/or declaratory relief;

      d.  Liquidated damages on all claims allowed by law;

      e.  Punitive and exemplary damages as allowed by law;

  f. Relevant statutory damages;

  g. Pre-judgment and post-judgment interest at the highest lawful rate;

  h. Attorney fees and costs of this action, including expert witness fees, as available by law; and,

  i. Any such further relief allowable by law or as justice requires.

**JURY DEMAND**

   Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on October 15, 2018.

       BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

       *Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at law, P.C.*

       *s/ Kate W. Beckman*
       Bryan E. Kuhn, Esq. #33642
       Kate W. Beckman, Esq. #42416
       1660 Lincoln Street, Suite 2330
       Denver, Colorado 80264
       (p) (303)424-4286 (f) (303)425-4013
       Bryan.Kuhn@beklegal.com
       Kate.Beckman@beklegal.com
       ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I declare under penalty of perjury that I have read this above Verified Complaint and the statements contained in it are true and correct to the best of my knowledge and belief.

Date:  October _15_, 2018

_Wendy Faulhaber_ (signature)
Wendy Faulhaber

Subscribed and sworn to before me in the county of Weld, State of Colorado, this _15th_ day of October, 2018.

My commission expires on:

09/21/2022

_Dawn Koshio_ (signature)
Notary

```
DAWN KOSHIO
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20104038580
My Commission Expires September 21, 2022
```